UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHLEEN M. WHALEN,<br><br>Plaintiff,<br><br>v.<br><br>JOHN G. MCMULLEN, individually and not in his official capacity with the Washington State Patrol,<br><br>PATRICIA LASHWAY, ACTING SECRETARY, WASHINGTON DEPARTMENT OF SOCIAL & HEALTH SERVICES, in her official capacity,<br><br>Defendants. | Civil Action No. 2:15-cv-01625-BJR<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION

Plaintiff Kathleen Whalen brings this action under 42 U.S.C. § 1983, alleging that Defendant John McMullen, an officer of the Washington State Patrol, violated the Fourth Amendment when he entered Plaintiff's home as part of a disability-fraud investigation. Plaintiff also brings suit against Patricia Lashway,[1] in her official capacity as acting secretary of the Washington Department of Social & Health Services (DSHS). Plaintiff asserts that DSHS, the

---

[1] Kevin Quigley was initially named as a Defendant to this lawsuit in his official capacity as secretary of DSHS. Dkt. 5, Pl.'s Compl. After Quigley resigned, Patricia Lashway was substituted in her official capacity. Dkt. 19.

1

agency that initiated the fraud investigation conducted by McMullen, is liable for McMullen's allegedly unlawful conduct.  Plaintiff also brings pendent state-law claims against McMullen, alleging that he violated Article I, section 7 of the Washington state constitution and that he is liable for trespass onto her property.  Plaintiff moves for summary judgment on all claims.  Defendants have also moved for summary judgment.

Having reviewed the parties' briefing, the record of the case, as well as the relevant legal authority, the Court will deny Plaintiff's Motion for Partial Summary Judgment [Dkt. #52].  The Court will grant Defendants' motions for summary judgment [Dkt. #44, 50].

## II.   FACTUAL AND PROCEDURAL BACKGROUND

John McMullen is a detective in the Criminal Investigative Division of the Washington State Patrol.  More specifically, McMullen is assigned to the Cooperative Disability Investigations Unit ("CDIU"), which investigates potential fraud by recipients of Social Security Disability ("SSD") benefits.  DSHS's Disability Determination Services ("DDS") division refers cases to the CDIU "to investigate allegations of fraud in SSA's disability programs for purposes of criminal prosecution and/or civil/administrative action."  Dkt. 53-1, Ex. 1 at 2.  The CDIU is overseen by the Office of the Inspector General ("OIG") of the United States Social Security Administration ("SSA").  *Id.* at 2–3.

A fraud case involving Plaintiff Kathleen Whalen was referred to the CDIU and assigned to Detective McMullen on October 11, 2012.  That same day, McMullen went to Plaintiff's home to observe her physical function and mobility as part of his investigation into whether Plaintiff was committing disability fraud.  When McMullen arrived, he knocked on Plaintiff's door.  McMullen identified himself as an officer of the Washington State Patrol, but did not disclose to Plaintiff that he was there as part of a disability-fraud investigation.  Rather,

McMullen told Plaintiff that he was investigating a fictitious identity theft. McMullen was wearing a badge around his neck. He also had a hidden camera.

McMullen and Plaintiff walked outside the home to McMullen's vehicle, where they spoke at length. Plaintiff informed McMullen that she had been the victim of an identity theft, about which she had pertinent information on her cell phone inside her home. The parties dispute what happened next. McMullen asserts that Plaintiff "invited" him into her home, while Plaintiff alleges that she walked into her home and McMullen "followed" her. Dkt. 47, McMullen Decl. ¶ 16; Dkt. 52 at 5; Dkt. 53, Ex. 3, McMullen Dep. at 46: 11–25. The pair continued their conversation inside the home. McMullen then left the premises.

Plaintiff filed the instant suit against McMullen and DSHS under 42 U.S.C. § 1983, alleging that McMullen's entry into her home and surreptitious videotaping inside violated the Fourth Amendment's prohibition on unreasonable searches. Plaintiff also alleges that McMullen's actions violated the Washington state constitution's prohibition on "home invasions." Finally, Plaintiff brings a trespass claim against McMullen.

### III.   DISCUSSION

**A. Summary judgment standard**

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Plaintiff's § 1983 claims

Section 1983 is not a source of substantive rights; rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Here, Plaintiff alleges that Defendants violated her Fourth Amendment right to be free from unreasonable searches by subjecting her to a warrantless search under false pretenses.  Plaintiff moves for summary judgment on this Fourth Amendment claim, arguing that McMullen's conduct—namely, entering her home without a search warrant after misrepresenting the nature of his investigation—was per se unreasonable.  Plaintiff also moves for summary judgment on her claims for equitable relief against DSHS, arguing that the agency is liable for McMullen's conduct because it initiated the fraud investigation.  McMullen moves for summary judgment, arguing that he is entitled to qualified immunity.  DSHS also moves for summary judgment and contends that Whalen does not have standing to pursue equitable relief against it.

### 1. McMullen is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, the Court "must determine whether: (1) the facts adduced constitute the violation of a constitutional right; and (2) the constitutional right was clearly established at the time of the alleged violation."  *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (citing *Pearson*, 555 U.S. at 232).  District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  Because the Court concludes that the law did not "clearly proscribe[]" McMullen's conduct at the time of the events giving rise to this suit, it does not reach the question of whether McMullen's conduct did, in the Court's own judgment, violate the Fourth Amendment. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

Plaintiff contends that McMullen's entry into her home violated the Fourth Amendment because "such entry was acquired by affirmative or deliberate misrepresentation of the nature of the government's investigation." *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984). But while it is true that McMullen affirmatively misrepresented his purpose for visiting Plaintiff, the evidence presented by the parties does not demonstrate that McMullen utilized the ruse specifically to secure entry into Plaintiff's home.  Rather, when McMullen arrived, he asked Plaintiff to step outside and accompany him to his truck so that he could engage her in conversation while simultaneously observing her physical activity. Dkt. 47, McMullen Decl. at 4 ¶ 13–14; Dkt. 52 at 5.  Plaintiff never alleges that McMullen claimed to need access to her home for his fictitious investigation.  This differs significantly from the cases that Plaintiff cites in support of her argument—namely, *United States v. Bosse*, 898 F.2d 113, 115 (1990).

In *Bosse*, an agent from the federal Bureau of Alcohol, Tobacco, and Firearms (ATF), escorted a state agent to the home of a firearms dealer whose state application for a license to sell weapons was pending. *Id.* at 114.  The state agent truthfully told the dealer that he was there to inspect the home as part of the license-application process, and the dealer accordingly granted both agents access to his home. *Id.*  However, the ATF agent did not disclose that he accompanied the state agent in his capacity as a federal agent "observ[ing] things of interest to ATF and the federal government." *Id.*  The *Bosse* court held that the ATF agent's entry into the

dealer's home constituted an unreasonable search because "a ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent." *Id.* at 115 (citing *United States v. Phillips*, 497 F.2d 1131, 1135 n.4 (9th Cir. 1974)).

In contrast to the federal agent in *Bosse*, McMullen did not engineer his ruse to coerce entry into Plaintiff's home. McMullen did not need to enter Plaintiff's home to gather information for his disability-fraud investigation; all he needed was to get Plaintiff to perform physical tasks so that he could observe her bodily movements—and he did so outside of Plaintiff's home. Dkt. 47, McMullen Decl. ¶ 16. After Plaintiff indicated that she had information she believed to be pertinent to the identity-theft investigation, the conversation appears to have flowed into Plaintiff's home without any explicit request by McMullen to enter the home as part of his investigation. Plaintiff has not presented the Court with any authority requiring McMullen to retreat from her home under these circumstances or clearly proscribing McMullen's conduct in this situation. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Finding that McMullen is not exceptional in either of these respects, the Court concludes that he is entitled to qualified immunity. McMullen's motion for summary judgment is granted.

**2. Plaintiff does not have standing to pursue equitable relief against DSHS.**

Plaintiff seeks declaratory and injunctive relief in the form of an order enjoining DSHS from allowing CDIU officers to utilize a ruse to gain access to her home. Plaintiff's request for relief presupposes, of course, that McMullen's warrantless entry into her home violated the Constitution, an issue that the Court has not reached in the above qualified-immunity analysis.

The Court need not reach that issue here either, as Plaintiff cannot meet "the irreducible constitutional minimum of standing" necessary to pursue the equitable relief she seeks. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In the context of equitable relief, alleged past wrongs "do not in and of themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 103. Instead, Plaintiff must "show that [s]he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal citations omitted). Plaintiff alleges that she may be exposed to repeated injury—warrantless entry into her home—as long as she continues receiving SSD benefits because there is no injunction preventing it. Dkt. 52 at 19–20. Such a tautological statement cannot itself suffice to demonstrate a real and immediate threat. Further, DSHS presents evidence that a determination has already been made that Plaintiff has not engaged in fraud, which reduces any credible threat that Plaintiff will again be subject to investigation, much less a ruse-entry into her home. Dkt. 68 at 10; Dkt. 51-2, French Dep. at 43:1–9.

**3. Plaintiff has not established a policy or custom of investigative ruses.**

In order to demonstrate that DSHS is liable for McMullen's conduct, Plaintiff must show that "there is a direct causal link between a [state] policy or custom" and McMullen's use of a ruse in investigating Plaintiff for fraud. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). DSHS argues that it is impossible for Plaintiff to prove that the agency had *any* policies regarding the investigative techniques employed by the CDIU, much less that it maintained any policies regarding the specific investigative technique at issue in this case. Indeed, Plaintiff does not offer any evidence tending to show that DSHS has promulgated policies governing the actual

investigative activities of the CDIU.  Rather, Plaintiff argues that, because DSHS is a "partner" in a multi-agency agreement giving rise to the CDIU, that it is responsible for all activities undertaken by the Unit.  But this agreement—the Memorandum of Understanding (MOU)—dictates that investigations are to be overseen by a federal agent from the SSA Office of the Inspector General, not by any policymaker at DSHS.  In fact, the MOU explicitly states that this federal agent "will be the CDI Unit's final decision-making authority regarding day-to-day CDI Unit operations, subject to OIG management oversight."  Dkt. 53, Ex. 1 at 4.  DSHS is not mentioned as a policy-making authority with respect to the investigations conducted by CDIU.

Finally, Plaintiff argues that while DSHS may not maintain any explicit investigative policies, it nonetheless "ratified" McMullen's conduct by failing to correct it.  In order to prove ratification, Plaintiff would need to demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24 (1988)).  A finding that a state actor ratified the conduct of a subordinate would only be appropriate if it is evident that "a deliberate choice to follow a course of action [wa]s made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* at 1347 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  Plaintiff has not produced any evidence that any person within DSHS made an affirmative choice ratifying McMullen's conduct or even that any person within DSHS *has* the policymaking authority to do so.  Indeed the MOU explicitly indicates that McMullen's investigative activities are overseen by an SSA special agent and not by any DSHS official.

The Court therefore agrees with DSHS that Plaintiff has not shown that she is facing an appreciable risk of future injury. Thus, Plaintiff cannot satisfy the irreducible minimum of standing with respect to her claim against DSHS. The Court therefore denies Plaintiff's motion for summary judgment on her § 1983 claim against DSHS and grants Defendant Lashway's motion as to the same.

### C. Plaintiff's state-law claims

Having disposed of Plaintiff's § 1983 claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-constitutional and trespass claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (reiterating that state law claims should be dismissed if federal claims are dismissed before trial).

## IV. CONCLUSION

Plaintiff's Motion for Partial Summary Judgment [Dkt. # 52] is DENIED. Defendant McMullen's Motion for Summary Judgment [Dkt. #44] is GRANTED. Defendant Lashway's Motion for Summary Judgment [Dkt. #50] is also GRANTED. This matter is hereby DISMISSED.

Dated this 27th day of February, 2017.

Barbara Jacobs Rothstein
U.S. District Court Judge